UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CARMEN RODRIGUEZ-RIVERA,** as
Personal Representative of the Estate of
**PEDRO JAVIER RIVERA AMADOR,**

    Plaintiff,

v.                                                              Case No.  8:12-cv-856-T-30TBM

**UNITED STATES OF AMERICA,**

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant United States of America's Motion to Dismiss (Dkt. 6), Plaintiff Carmen Rodriguez-Rivera's Response in opposition (Dkt. 9), and Defendant's Reply (Dkt. 14).  The Court, having considered the motion, response, reply, and being otherwise advised of the premises, concludes that the motion should be denied with respect to Counts I and II and granted with respect to Counts III and IV.

## BACKGROUND

On April 19, 2012, Plaintiff Carmen Rodriguez-Rivera, as personal representative of the estate of Pedro Javier Rivera Amador, filed the instant complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*.  Plaintiff's complaint alleges claims against Defendant United States of America stemming from injuries and losses sustained when a

vehicle driven by Marine Corps Captain Scott P. Sciple collided with Plaintiff's vehicle, injuring Plaintiff and killing her husband, Pedro Javier Rivera Amador.

At all times material, Sciple was a United States Marine. Sciple was deployed four times. During these deployments, Sciple witnessed horrific events, came under attack, and sustained wounds. On a number of occasions, Sciple consumed alcohol and exhibited erratic behavior and memory loss. He was also outwardly skittish at times in response to loud noises and explosions.

On June 4, 2009, Sciple sustained wounds from an enemy 107 mm rocket attack at COP Raway and was awarded the Purple Heart. The point of impact of the rocket was approximately 30 feet from Sciple. Sciple sustained significant wounds to his right forearm that required a combat application tourniquet to stop the bleeding. Sciple lost a significant volume of blood due to arterial laceration and tissue damage to his right forearm and was evacuated via helicopter. Sciple's command relayed concerns to Naval Medical Center San Diego (NMCSD) that Sciple may be suffering from Post-Traumatic Stress Disorder (PTSD).

On June 30, 2009, a neuropsychological assessment of Sciple indicated a "history of 3 blast exposures since 2004" with mild deficits in verbal learning and attention. The mental deficits were attributed to mild head injury and "medication effects from his pain medications." The neuropsychological assessment on June 30, 2009, declared Sciple "cognitively fit for full duty" with "no interventions deemed necessary to address his attention problems". The evaluation also indicated a mild cognitive disorder was possible

but ruled out Traumatic Brain Injury ("TBI"). The neuropsychologist recommended phone monitoring by C5 personnel to track his recovery.

From June 17, 2009 to September 22, 2009, Sciple was assigned to the West Coast Wounded Warrior Battalion. In 2009, Sciple exhibited PTSD symptoms, such as memory loss, flashbacks, and erratic sleep habits.

From September 23, 2009 to April 18, 2010, Sciple served as commander of H&S Company, 2nd Battalion, 1st Marines. Lt. Col. M.S. Reid, Commanding Officer 2nd Battalion, 1st Marines, considered Sciple fit for duty for an assignment as CO of H&S Company.

On the post deployment health assessment (PDHA) dated November 20, 2009, Sciple did not screen positive for TBI, but still had headaches and sleep and balance problems. On the PDHA dated November 20, 2009, Sciple indicated he drank 3 to 4 times a week and consumed an average of 4 drinks during those times.

During a post-deployment company grade officer social event, Sciple went to the wrong place to meet the group, even though he was very familiar with the location. His peers noted this as "another example of how everyday life was more difficult for him." In December 2009, Sciple became intoxicated and belligerent during a social outing. His peers noted that alcohol seemed to have a more deleterious effect on Sciple than normal.

On February 23, 2010, NMCSD Ortho found Sciple "full duty and worldwide deployable. Cleared for deployment". A March 23, 2010, Marine Corps Wounded/Ill Injured Tracking System entry states that "SNM is full duty and in good sprits. No request

for support at this time. He is doing good and no new issues." On the PDHA dated April 19, 2010, Sciple indicated no issues of concerns. A medical officer reviewed the form and re-affirmed full duty status. There were no entries from a mental health professional.

On April 20, 2010, Sciple received Temporary Additional Duty (TAD) orders to SOCCENT MacDill AFB Tampa, Florida. Sciple's Battalion Commander made the final decision to send him TAD to SOCCENT with concurrence of the regiment. Sciple's Battalion Commander was aware of Sciple's past but did not screen his medical records or make contact with MARCENT to advise of his past. Sciple's Battalion Commander considered Sciple "fit for duty" and "his past (although compelling) really wasn't a huge concern considering the billet he was going to fill." Sciple was disappointed about leaving his Battalion.

On April 18, 2010, Sciple checked in with the MARCENT LNO at Camp LeJeune, NC for PTP training. Sciple's TAD orders directed him to report to Commander, U.S. Marines Corps Forces, Central Command, MacDill Air Force Base, Florida, no later than 2359 hours, April 24, 2010, for TAD with SOCCENT.

On April 23, 2010, Sciple arrived in Tampa, Florida. Sciple rented a car from Enterprise Rent-A-Car through the contract negotiated by the Marine Corps for its servicemen and women. During the early morning hours of April 25, 2010, Sciple left his Marine Corps rented apartment and got into his Marine Corps rented vehicle to purchase tobacco. Ultimately, he wound up over ten miles away, traveling the wrong way down Interstate 275. Sciple struck a vehicle head on, killing Pedro Javier Rivera Amador and

injuring Carmen Rodriguez-Rivera. Following the crash, law enforcement authorities investigating the accident tested Sciple's blood alcohol level, which was 3 times the legal limit. Sciple had no memory of consuming alcohol that evening. He also did not remember how he ended up on Interstate 275 going the wrong way.

Plaintiff's complaint alleges two counts of motor vehicle negligence based on allegations that Defendant is liable for the actions of its military employee, Sciple, because he was officially on Temporary Additional Duty and had reported for duty to his commanding officer as of the date and time of the incident.

Plaintiff's complaint also includes two counts of negligent training, supervision, and retention based on allegations that Defendant owed a legal duty to the general public to adequately train, supervise, and monitor its fighting forces. Plaintiff further alleges that: Defendant knew, or reasonably should have known that deployments to Iraq and Afghanistan substantially increased the likelihood that its soldiers may experience symptoms of PTSD upon their return; multiple deployments substantially increased the likelihood that a particular soldier may suffer PTSD to a greater degree than what may be considered normal; such soldiers are at risk of harming themselves or others as a result of PTSD-induced violence, rage, memory loss, "blacking out" and "dis-associative behavior"; many soldiers subjected to "concussive forces" caused by explosions would suffer TBI to some degree; and such soldiers are at risk of harm to themselves or others.

Plaintiff claims that Defendant negligently failed to diagnose Sciple's PTSD and TBI, negligently failed to provide appropriate treatment, negligently classified Sciple as "fit for

duty" without restrictions, negligently allowed him to rent a car and drive, and negligently failed to alert the commanding officer at SOCCENT that Sciple posed a risk to himself or others.

Defendant now moves to dismiss Counts I and II of Plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) on the ground that Sciple was not acting in the scope of his federal employment with the military at the time of the subject accident.

Defendant also moves to dismiss Counts II and III of Plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) because the negligence claims fall within the discretionary function exception to the FTCA.

## **STANDARD OF REVIEW**

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." A "facial attack" on the complaint requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990). A "factual attack," on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings. *Id.* Under a factual attack, the Court may hear conflicting evidence and decide the factual issues that determine jurisdiction. *See Colonial Pipeline Co. v. Collins,* 921 F.2d 1237, 1243 (11th Cir. 1991). However, if "the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a factual attack." *Lawrence,* 919 F.2d at 1530.

Here, Defendant raises factual challenges to the Court's subject matter jurisdiction and is submitting matters outside the pleadings.

## **DISCUSSION**

**I.     Defendant's Motion to Dismiss Counts I and II of Plaintiff's Complaint**

The FTCA provides jurisdiction only for torts "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Defendant argues that the Court does not have subject matter jurisdiction over Plaintiff's motor vehicle negligence counts because Sciple was not acting within the scope of his federal employment at the time of the accident.

The Court concludes that it would be premature to rule on Defendant's argument based on the limited record. The Eleventh Circuit's opinion in *Lawrence* is directly on point as to why a scope of employment analysis is premature at this stage. Like this case, *Lawrence* involved a damages claim resulting from a car accident between two automobiles, one driven by an employee of the United States who consumed alcoholic beverages at the office Christmas party and the other driven by the plaintiff. *See* 919 F.2d at 1526. The district court dismissed the case for lack of subject matter jurisdiction of the suit brought under the FTCA. *See id.* The Eleventh Circuit reversed, reasoning: "The existence of plaintiff's cause of action depends on whether [the federal employee] was acting within the course and scope of his employment. The pertinent inquiry will resolve both the question

of subject matter jurisdiction and a necessary element of the tort claim." *Id.* at 1529. The Eleventh Circuit found: "When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction." *Id.* at 1530. The Eleventh Circuit noted, however, the limited scope of its holding: "We express no opinion on the merits of the plaintiff's claim. We simply hold that under the law of this circuit ... federal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact." *Id.* at 1530-31.

In the instant case, the jurisdictional basis of the motor negligence claims is intertwined with the merits of the claims. Under this scenario, the Court should apply a Rule 56 summary judgment standard. But it would be premature to do so based on the limited record before the Court. As stated in *Blumel v. Mylander*, 919 F. Supp. 423, 428 (M.D. Fla. 1996), Rule 56 "implies [that] district courts should not grant summary judgment until the non-movant has had an adequate opportunity for discovery." Furthermore, the Eleventh Circuit has decisively determined that "summary judgment may only be decided upon an adequate record." *Snook v. Trust Co. of Ga. Bank*, 859 F.2d 865, 870 (11th Cir. 1988).

Accordingly, Defendant's motion to dismiss Counts I and II is denied without prejudice to renew this argument at the summary judgment stage.

**II.      Defendant's Motion to Dismiss Counts III and IV of Plaintiff's Complaint**

Defendant moves to dismiss Counts III and IV, which allege negligent training, supervision, and retention of an employee resulting in wrongful death and personal injury on the ground that the conduct of which Plaintiff complains falls within the discretionary function exception to the FTCA.  Unlike Counts I and II, this jurisdictional basis is not intertwined with the merits of the claims.

The FTCA provides an exception for a claim based upon: "an act or omission of an employee of the Government exercising due care ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The Eleventh Circuit follows the Supreme Court's two-step test to determine whether a governmental act or omission falls within the ambit of the discretionary function exception.  First, a court must analyze whether the act "involv[es] an element of judgment or choice." *U.S. v. Gaubert,* 499 U.S. 315, 322 (1991) (quoting *Berkovitz v. U.S.,* 486 U.S. 531, 536 (1988)); *Hughes v. U.S.,* 110 F.3d 765, 767 (11th Cir. 1997).  "[I]f a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,'" there is no judgment or choice involved.  *Gaubert,* 499 U.S. at 322 (quoting *Berkovitz,* 486 U.S. at 536); *see also Phillips v. U.S.,* 956 F.2d 1071, 1076 (11th Cir. 1992) ("Where there exists a mandatory responsibility, there is no room for a policy choice.").  The inquiry focuses on "whether the controlling statute or regulation mandates

that a government agent perform his or her function in a specific manner." *Hughes,* 110 F.3d at 768.

If a court concludes that the conduct involves an element of judgment or choice, the court must then analyze "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Gaubert,* 499 U.S. at 322-23 (quoting *U.S. v. Varig Airlines,* 467 U.S. 797, 813 (1984)). The exception is intended to prevent judicial "second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* (quoting *Varig Airlines,* 467 U.S. at 814). Thus, "when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Gaubert,* 499 U.S. at 323 (quoting *Berkovitz,* 486 U.S. at 537).

Under the second part of the test, the court should look at whether the questioned act is "'susceptible to policy analysis.'" *Hughes,* 110 F.3d at 768 (quoting *Powers v. U.S.,* 996 F.2d 1121, 1125 (11th Cir. 1993)). The exception does not require there to have been actual "weighing of policy considerations." *Hughes,* 110 F.3d at 768. Nor is it limited to decisions at the policy or planning level; it may include day-to-day management. *See Gaubert,* 499 U.S. at 325.

The Court notes that Plaintiff's complaint does not allege a specific and binding directive that addresses Defendant's actions. Plaintiff argues, however, that she intends to show that the "military failed to follow the mandated procedures for PDHA." Plaintiff makes this point generally and does not cite to any specific provision of the PDHA. The Court's

review of the PDHA does not demonstrate a *specific and binding* directive that addresses any of the actions alleged in Plaintiff's complaint that Defendant allegedly failed to take or that Defendant took in error. (Dkt. 6, Exs. A & B thereto). A review of the regulations applicable to the health assessments for post-deployment soldiers demonstrates that health care professionals are granted discretion in applying them. *See id.* The medical professionals involved in Sciple's care exercised their professional judgment in assessing his health by implementing the practices described in the relevant policies. It is clear that the decisions of the health care providers who assess returning soldiers and conduct screening for health problems including PTSD and TBI require judgment as to which treatment options, if any, are necessary. This judgment also is reliant upon the information the soldier divulges with respect to his or her mental and physical health during the process.

There is no statute, regulation, or policy that required Sciple's medical providers to reach different conclusions about the lack of a PTSD or TBI diagnosis, or that mandated that Defendant should have reached a different conclusion about Sciple's fitness for duty. Likewise, there is no mandate or directive that Sciple's commanding officer ignored when he ordered Sciple to TAD at MacDill. In sum, the first part of the two-part test is satisfied.

Turning to the second part of the test, the Court agrees with Defendant that the decisions about the frequency and nature of post-deployment health assessments, the availability of assistance, and the propriety of referring soldiers for additional care involve public policy. Similarly, decisions related to the military's conclusion that a soldier is fit for duty are clearly grounded in public policy.

Plaintiff's focus on Defendant's abuse of discretion when it cleared Sciple for world-wide duty and allowed him to drive a dangerous instrumentality is unpersuasive because numerous cases support the proposition that the discretionary function exception applies even when discretion is abused, through negligence or otherwise. *See, e.g., Hughes,* 110 F.3d at 768 n.1; *Ochran v. U.S.,* 117 F.3d 495, 502 n.2 (11th Cir.1997); *Autery,* 992 F.2d at 1528. In fact, the Eleventh Circuit has explicitly stated that "[o]ur concern under the discretionary function exception *is not whether the allegations of negligence are true.*" *Hughes,* 110 F.3d at 768 n.1 (emphasis added).

Finally, Plaintiff argues, in the alternative, that a theory of liability grounded on negligent entrustment of a vehicle is not barred by the discretionary exception because it involves a "more localized routine judgment" that is not grounded in policy. The Court is unpersuaded by this argument because it overly parses Defendant's overall decision that Sciple was fit for duty, which ultimately resulted in Sciple's action of renting the vehicle that caused the accident, into separate actions. *See Mid–South Holding Company, Inc. v. U.S.,* 225 F.3d 1201, 1207 (11th Cir. 2000) ("[A]lmost any exercise of governmental discretion could be overly parsed so as to focus on minute details of sub-decisions to the point that any relationship to policy would appear too attenuated.... [S]uch tunnel-visioned analyses would render the discretionary function exception nugatory and open virtually every decision that implements a governmental decision to liability") (alterations in original) (quoting *Baldassaro v. U.S.,* 64 F.3d 206, 211-12 (5th Cir. 1995)).

In sum, the discretionary function exception applies to Plaintiff's negligence claims in Counts III and IV of the complaint. Accordingly, the Court lacks subject matter jurisdiction over Counts III and IV and they must be dismissed.

It is therefore ORDERED AND ADJUDGED that, for the reasons stated herein:

1. Defendant United States of America's Motion to Dismiss (Dkt. 6) is denied in part and granted in part.

2. Counts I and II of the complaint are not dismissed and Defendant shall file an answer to Counts I and II of the complaint within fourteen (14) days of this Order.

3. Counts III and IV of the complaint are dismissed.

**DONE** and **ORDERED** in Tampa, Florida on October 24, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-856.mtdismiss6.frm